OPINION
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1268 
Defendant and appellant Mark Cosgrove appeals a trial court's judgment finding him to be a mentally disordered offender (MDO) under Penal Code section 2962 et seq.[1] We hold that the trial court erred in granting the People's motion for a directed verdict; the error, however, was harmless. Therefore, we affirm the judgment.
 FACTUAL AND PROCEDURAL HISTORY
Defendant was originally convicted of making terrorist threats. While in a delusional state and armed with a knife, defendant threatened his mother and sister because he believed them to be "aliens," who were conspiring against him.
During incarceration with the Department of Corrections, defendant engaged in delusional and violent behavior. Thus, he was transferred to a prison psychiatric hospital. At the hospital, it was determined that defendant met the MDO criteria. Therefore, he was placed under the jurisdiction of the State Department of Mental Health, and defendant was eventually transferred to Patton State Hospital.
During defendant's second annual MDO evaluation, the Board of Prison Terms (BPT) concluded that he met the criteria for continued treatment. Defendant requested a jury trial on that finding under section 2966. During trial, two mental health experts testified on behalf of the People. Both doctors agreed that defendant suffered a schizoaffective disorder with paranoid features, a severe mental disorder under section2962. Moreover, the doctors opined that the disorder was not in remission or could not be kept in remission without treatment. The doctors agreed that, by reason of his disorder, defendant posed a substantial danger of physical harm to others. Defendant presented no evidence. *Page 1269 
After the close of evidence, the People moved for a directed verdict under Code of Civil Procedure section 630 Although defendant objected to a directed verdict, the trial court granted the motion. Hence, without submitting the case to the jury, the trial court affirmed the findings of the BPT annual review. Defendant's commitment as a special term and condition of parole under the jurisdiction of the State Department of Mental Health was therefore extended. Defendant appeals.
 ANALYSIS I. The Trial Court Improperly Granted the Motion for a Directed Verdict
Defendant contends that the trial court erred in granting the People's motion for a directed verdict, a procedure utilized in civil trials, because it removed the case from the jury. We agree.
 A. Legal Background on MDO Hearings
Section 2962 sets out three criteria that must be met by psychiatric certification for the BPT to retain a potential parolee and require that he be treated by the State Department of Mental Health: that the prisoner (1) have a severe mental disorder (2) is not in remission or cannot be kept in remission without treatment, and (3) that, by reason of the severe mental disorder, the prisoner represents a substantial danger of physical harm to others.
If a prisoner disagrees with the BPT determination, the prisoner may file a petition for a hearing under section 2966, which provides:
 "A prisoner who disagrees with the determination of the Board of Prison Terms that he or she meets the criteria of Section 2962, may file . . . a petition for a hearing on whether he or she as of the date of the Board of Prison terms hearing, met the criteria of Section 2962. . . . The hearing shall be a civil hearing; however, in order to reduce costs, the rules of criminal discovery, as well as civil discovery, shall be applicable. The standard of proof shall be beyond a reasonable doubt, and if the trial is by jury, the jury shall be unanimous in its verdict. The trial shall be by jury unless waived by both the person and the district attorney."[2]
(Italics added.) *Page 1270 
 B. Procedural Background
At the start of plaintiff's hearing, the People advised the trial court that, after both sides rested, the People intended to move for a directed verdict under Code of Civil Procedure section 630[3]
After the People presented their experts and defendant rested without presenting any evidence, the prosecutor moved for a directed verdict, arguing that the MDO proceeding was a civil hearing. Defendant objected, arguing that a directed verdict would "circumvent" his right to a jury trial under both state and federal constitutions.
Relying on Seling v. Young,[4] People v. Superior Court (Myers),[5]
and section 2966's language which states that the MDO hearing "shall be a civil hearing," the trial court concluded that a motion for a directed verdict was permissible. Thereafter, the trial court granted the motion for a directed verdict.
 C. The MDO Hearing Is a Civil Hearing
In order to determine whether a particular proceeding is criminal, we look to the Legislature's intent and to the purpose and effect of the statute.[6] In People v. Superior Court (Myers),[7] the court noted that "the Legislature has expressly provided than an MDO `hearing shall be a civil hearing' (§§ 2966, subd. (b), 2972, subd. (a), italics added) thereby indicating that when a petition is filed against a person it intends that the court proceed in a nonpunitive, noncriminal manner."[8] The court, however, recognized the civil label is not dispositive. "Where a defendant provides `"the clearest proof"' that the `"statutory *Page 1271 
scheme [is] so punitive either in purpose or effect'" the proceeding must be considered criminal. [Citation.]"[9]
The Myers court found that "the MDO provisions are neither punitive in purpose nor effect and their procedural safeguards do not require us to transform the hearing into a criminal trial. [Citation.]"[10] In reaching this conclusion, the court noted that "[t]he purpose of the MDO statutory scheme is to provide mental healthtreatment for those offenders who are suffering from presently severemental illness, not to punish them for their past offenses."[11]
Thereafter, People v. Robinson also analyzed whether the MDO law is civil or penal.[12] The Robinson court stated that a United States Supreme Court case, Kansas v. Hendricks,[13] supported the decision rendered in Myers.[14] In Hendricks, "the United States Supreme Court decided the constitutionality of Kansas's Sexually Violent Predator [SVP] Act, a law which established civil commitment procedures for repeat sexual offenders."[15] The defendant argued that since he was convicted before the law was enacted, application of the law violated the federal constitutional ban on ex post facto statutes. The defendant "asserted the act established criminal proceedings and hence was punitive. [Citation.]"[16] The Supreme Court decided that the Kansas Legislature intended the act to establish a civil proceeding — the Legislature described the act as creating a "civil commitment procedure" and placed it in the state's probate code.[17] Moreover, the Supreme Court noted that the act did not implicate either of the two primary objectives of criminal punishment — retribution or deterrence.[18]
After analyzing Hendricks, the Robinson court noted that "Hendricks'
analysis of the noncriminal features of Kansas's sexually violent predator law applies equally to California's MDO law. The features of the law analyzed in Hendricks are substantially similar to the features of the MDO law [citation], except that the MDO law governs the mental health treatment of a different type of offender and is placed in the Penal Code instead of a *Page 1272 
civil law code."[19] The Robinson court, however, noted that "the scheme's placement in the Penal Code is not a material feature in differentiating it from the mentally ill offender scheme in Hendricks," in light of the Legislature's express declaration that the MDO law "provides prisoners with a `civil hearing' to determine whether they meet the criteria of the MDO scheme. [Citations.]"[20] Another case, Peoplev. Otis, followed Robinson and did not "dispute that an MDO proceeding is civil, rather than a criminal, matter. [Citation.]"[21]
Moreover, in Seling v. Young,[22] the United States Supreme Court addressed whether Washington State's SVP commitment proceeding was civil or criminal. The Supreme Court stated:
 "[W]e proceed on the understanding that the Washington Act is civil in nature. [It] is strikingly similar to a commitment scheme we reviewed four terms ago in Kansas v. Hendricks [citation]. . . . In Hendricks, we explained that the question whether an Act is civil or punitive in nature is initially one of statutory construction. [Citation.] A court must ascertain whether the legislature intended the statute to establish civil proceedings. A court will reject the legislature's manifest intent only where a party challenging the Act provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the State's intention."[23]
The Supreme Court further stated that, while states may provide procedural safeguards in these commitment proceedings similar to those afforded to defendants in the criminal context, that does not alter the civil character of such schemes.[24] Hence, simply because California elected to provide petitioners certain procedural safeguards at MDO hearings, such safeguards do not transform what the Legislature expressly determined to be a civil hearing into a criminal prosecution.
We recognize that in Kansas v. Crane,[25] the United States Supreme Court recently reconsidered the constitutionality of the Kansas SVP Act that was at issue in Hendricks. The majority of the court held that the United States Constitution does not permit a civil commitment under Kansas' SVP Act *Page 1273 
without any lack of control determination being made.[26] Crane, however, did not alter the test for weighing the civil or punitive nature of those proceedings. Moreover, in contrast to the Kansas SVP Act, California's MDO statutory scheme already requires a finding that "by reason of his . . . severe mental disorder the prisoner represents a substantial danger of physical harm to others."[27] Hence, the deficiency found by the Supreme Court in Kansas' SVP Act does not apply to California's MDO law.
Furthermore, in a case published on July 11, 2002, People v. Beeson, we held that "on a petition for continued treatment under section 2972, a trial court is not required to instruct the jury to presume that the defendant is not an MDO for purposes of that proceeding" because MDO proceedings are "civil and nonpunitive" in nature.[28]
Therefore, we hold that, consistent with the cases cited above, MDO hearings are civil in nature. Our analysis, however, does not end here. Even if MDO hearings are considered to be civil in nature, we must next determine whether the trial court properly granted the People's motion for a directed verdict, notwithstanding the language of the statute that a jury must unanimously decide defendant's case unless the jury trial is waived by both defendant and the People.
 D. The Trial Court Erred in Granting the People's Motion for a Directed Verdict
Section 2966 states that MDO hearing shall be civil. However, it also states that "[t]he standard of proof shall be beyond a reasonable doubt, and if the trial is by jury, the jury shall be unanimous in its verdict. The trial shall be by jury unless waived by both the person and the district attorney."[29] (Italics added.)
Although defendant argues that the trial court's decision to "take the case away from the jury" implicates the Fourteenth Amendment of the United States Constitution, that is not so. In People v. Montoya,[30]
we concluded that a defendant's right to a jury trial in a similar proceeding was "`merely a matter of state procedural law,' and [did] not implicate the Fourteenth Amendment. [Citation.]"[31]
In Montoya, we considered the issue of waiver of a jury trial in the context of a petition for involuntary commitment of a prisoner as an MDO, under *Page 1274 
section 2970. Section 2972, which provides how a section2970 hearing should be conducted, mirrors the language in section2966: "The standard of proof under this section shall be proof beyond a reasonable doubt, and if the trial is by jury, the jury shall be unanimous in its verdict. The trial shall be by jury unless waived by both the person and the district attorney."[32] In Montoya, the defense counsel waived a jury trial without any express waiver from the defendant himself.[33] We rejected the defendant's contention that his constitutional rights were violated. We noted that "where a jury trial right is merely statutory, the federal Constitution is generally not implicated, and the right may be waived by counsel. [Citations.]"[34]
While a personal waiver is required in a criminal case, an MDO proceeding is "a civil hearing," and defense counsel may waive a jury on behalf of defendant.[35]
Because defendant's right to a jury trial is statutory and not constitutional, we need not address defendant's constitutional challenge to the trial court's granting of a directed verdict. Instead, we must look to the statute and determine whether the trial court had the authority to make a determination in a case where neither the defense counsel nor the defendant waived defendant's right to a jury trial.
"`In interpreting statutes, we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law, "`"whatever may be thought of the wisdom, expediency, or policy of the act."'"' [Citation.] We give the words of the statute `"their usual and ordinary meaning."' [Citations.] `"Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." [Citation.] Interpretations that lead to absurd results or render words surplusage are to be avoided. [Citation.]' [Citation.] `If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not `interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]"' [Citation.]"[36]
Finally, courts "`"read every statute `with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]"'"[37]
Under section 2966, the Legislature stated that MDO hearings are civil in nature. The Legislature, however, also stated that "[t]he trialshall be *Page 1275 
by jury unless waived by both the person and the district attorney."[38]
(Italics added.) In essence, although MDO hearings are civil in nature, the Legislature afforded defendants in MDO hearings certain protections guaranteed for criminal defendants — such as a unanimous jury, right to a jury trial unless waived, and beyond a reasonable doubt standard of proof. Because interpretations that "render words surplusage are to be avoided,"[39] we hold a jury trial is required unless waived.
In this case, defendant did not waive his right to a jury trial. Hence, the trial court improperly granted the People's motion for a directed verdict — which essentially converted defendant's jury trial into a bench trial without defendant's waiver.
 II. The Trial Court's Error Was Harmless
Next, we must determine whether the trial court's error is subject to harmless error analysis. Defendant argues that the error is reversible per se because it is a structural error. We disagree. As will be explained below, the trial court's error is subject to the Watson[40] harmless error analysis.
In People v. Epps, the California Supreme Court determined whether the harmless error analysis applied to the trial court's failure to give the defendant a jury trial of the prior conviction allegations.[41] The California Supreme Court stated that "`[a]n error that violates a defendant's rights under the federal Constitution requires automatic reversal if it constitutes a `structural defect' in the trial. [Citation.] On the other hand, if it represents `simply an error in the trial process' [citation], it is subject to harmless error analysis under the standard the high court announced in Chapman v. California (1967)386 U.S. 18. . . ."[42] The Epps court, however, did not determine the applicability of the dual federal standards "because the right to a jury trial of the prior conviction allegations in this case is purely a creature of state statutory law. [Citations.] When a state need not provide a jury trial at all, it follows that the erroneous denial of that right does not implicate the federal Constitution. [Citations.] *Page 1276 
Moreover, because the error is purely one of state law, the Watson
harmless error test applies. [Citations.]"[43]
As discussed above, a defendant's right to a jury trial in an MDO proceeding is statutory.[44] Hence, the trial court's granting of a motion for directed verdict is subject to harmless-error analysis underWatson — whether it is reasonably probable that a result more favorable to defendant would have been reached absent the error.[45]
Applying the Watson test to this case, we conclude that it is not reasonably probable that a result more favorable to defendant would have been reached if the jury, instead of the court, had tried the issue of whether defendant met the criteria of an MDO.
Here, the evidence to support an MDO finding was overwhelming. The People presented two experts who opined that defendant met the MDO criteria set forth under section 2062: (1) that defendant suffered a severe mental disorder — schizoaffective disorder with paranoid features; (2) that the disorder was not in remission or could not be kept in remission without treatment; and (3) that by reason of defendant's disorder, defendant posed a substantial danger of physical harm to others. Defendant presented no evidence.
During the cross-examination of the two expert witnesses, defense counsel attempted to discredit their testimonies. The effect of the cross-examination, however, was minimal. The witnesses' qualifications as experts were not questioned. The witnesses' assessment of defendant was not challenged. The testimony given by the experts during cross-examination simply provided more information regarding defendant's attendance at "AA/NA" meetings, defendant's participation in the "ward government," defendant's failure to show any active signs of violence toward any of the staff members, and defendant's receipt of a "grounds' card" which is "given to patients who have earned that privilege by not acting out, not having behavior problems or severe, acute psychiatric problems that endanger themselves or other people on the hospital grounds." Despite the experts' knowledge of these facts, the experts opined that defendant met the MDO criteria.
In light of the unrefuted testimony of the two experts, the trial court's error could not possibly have affected the result. Therefore, we hold that the trial court's error was harmless. *Page 1277 
 DISPOSITION
The judgment is affirmed.
We concur:
MCKINSTER, ACTING P.J.
RICHLI, J.
[1] Unless otherwise specified, all statutory references are to the Penal Code.
[2] Section 2966, subdivision (b).
[3] Code of Civil Procedure, section 630 states:
 "(a) . . . after all parties have completed the presentation of all of their evidence in a trial by jury, any party may, without waiving his or her right to trial by jury in the event the motion is not granted, move for an order directing entry of a verdict in its favor.
 "(b) If it appears that the evidence presented supports the granting of the motion to some, but not all, of the issues involved in the action, the court shall grant the motion as to those issues and the action shall proceed on any remaining issues.
 "(c) If the motion is granted, unless the court in its order directing entry of the verdict specifies otherwise, it shall operate as an adjudication of the merits."
[4] Seling v. Young (2001) 531 U.S. 250 [121 S.Ct. 727,148 L.Ed.2d 734] (Seling).
[5] People v. Superior Court (Myers) (1996) 50 Cal.App.4th 826, 834
(Myers).
[6] United States v. Ward (1980) 448 U.S. 242, 248 [100 S.Ct. 2636,65 L.Ed.2d 742]; Myers, supra, 50 Cal.App.4th 826, 834.
[7] Myers, supra, 50 Cal.App.4th 826, 834.
[8] Myers, supra, 50 Cal.App.4th 826, 834.
[9] Myers, supra, 50 Cal.App.4th 826, 834.
[10] Myers, supra, 50 Cal.App.4th 826, 834.
[11] Myers, supra, 50 Cal.App.4th 826, 837.
[12] People v. Robinson (1998) 63 Cal.App.4th 348, 350
(Robinson).
[13] Kansas v. Hendricks (1997) 521 U.S. 346 [117 S.Ct. 2072,138 L.Ed.2d 501] (Hendricks).
[14] Robinson, supra, 63 Cal.App.4th 348, 352.
[15] Robinson, supra, 63 Cal.App.4th 348, 350.
[16] Robinson, supra, 63 Cal.App.4th 348, 350-351.
[17] Robinson, supra, 63 Cal.App.4th 348, 351.
[18] Robinson, supra, 63 Cal.App.4th 348, 351.
[19] Robinson, supra, 63 Cal.App.4th 348, 352.
[20] Robinson, supra, 63 Cal.App.4th 348, 352.
[21] People v. Otis (1999) 70 Cal.App.4th 1174, 1176.
[22] Seling, supra, 531 U.S. 250.
[23] Seling, supra, 531 U.S. 250, 260-261.
[24] Seling, supra, 531 U.S. 250, 261; see also Hendricks, supra,521 U.S. 346, 361-365 and Allen v. Illinois (1986) 478 U.S. 364, 372
[106 S.Ct. 2988, 92 L.Ed.2d 296].
[25] Kansas v. Crane (2002) 534 U.S. 407 [122 S.Ct. 867,151 L.Ed.2d 856] (Crane).
[26] Crane, supra, 534 U.S. 407, 410.
[27] Section 2962, subdivision (d)(1).
[28] People v. Beeson 99 Cal.App.4th 1393, 1411, 1409
[122 Cal.Rptr.2d 384].
[29] Section 2966, subdivision (b).
[30] People v. Montoya (2001) 86 Cal.App.4th 825, [103 Cal.Rptr.2d 579] (Montoya).
[31] Montoya, supra, 86 Cal.App.4th 825, 832.
[32] Section 2972, subdivision (a); see also, section 2966, subdivision (b).
[33] Montoya, supra, 86 Cal.App.4th 825, 827-828.
[34] Montoya, supra, 86 Cal.App.4th 825, 829.
[35] Montoya, supra, 86 Cal.App.4th 825, 830.
[36] People v. Loeun (1997) 17 Cal.4th 1, 9; People v. Robles (2000)23 Cal.4th 1106, 1111.
[37] People v. Herrera (1998) 67 Cal.App.4th 987, 990.
[38] Section 2966, subdivision (b).
[39] People v. Loeun, supra, 17 Cal.4th 1, 9; People v. Robles, supra,23 Cal.4th 1106, 1111.
[40] People v. Watson (1956) 46 Cal.2d 818, 836.
[41] People v. Epps (2001) 25 Cal.4th 19, 28-29 (Epps).
[42] Epps, supra, 25 Cal.4th 19, 29.
[43] Epps, supra, 25 Cal.4th 19, 29.
[44] See Montoya, supra, 86 Cal.App.4th 825, 829-830.
[45] Epps, supra, 25 Cal.4th 19, 28-29. *Page 1278