49 Cal.Rptr.3d 511 (2006)
143 Cal.App.4th 730
Richard MURILLO, Petitioner,
v.
The SUPERIOR COURT of San Bernardino County, Respondent;
The People of the State of California, Real Party in Interest.
No. G035816.
Court of Appeal of California, Fourth District, Division Three.
September 29, 2006.
*513 Gerard Farber, Interim Public Defender, and Pamela P. King, Deputy Public Defender for Petitioner.
No appearance for Respondent.
Michael A. Ramos, District Attorney, Mark Vos and Mary L. Andonov, Deputy District Attorneys, for Real Party in Interest.

OPINION
RYLAARSDAM, Acting P.J.
This petition for a writ of mandate arises from an action under Welfare and Institutions Code section 6600 et seq. (the Act) to have petitioner Richard Murillo civilly committed as a sexually violent predator. We are asked to determine whether the district attorney may propound requests for admissions, which, if admitted, might eliminate the state's burden to prove the ultimate issues in the case.
Earlier cases have held that certain types of discovery under the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.) apply to actions under the Act. As a matter of first impression, however, we hold that requests for admissions may not be propounded in proceedings under the Act because their use would eviscerate the Act's requirement that the state prove its case beyond a reasonable doubt and, where the case is tried to a jury, obtain a unanimous verdict before a person may be committed. To relieve the state of this burden would deprive a person of liberty interests in violation of the right to due process.

FACTS AND PROCEDURAL HISTORY
In 2001 the San Bernardino District Attorney filed a petition seeking to have petitioner civilly committed as a sexually violent predator under the Act. At the time petitioner had been paroled to a state mental hospital after serving a sentence for infliction of corporal injury upon a spouse, cohabitant, or coparent of a child. (Pen. Code, § 273.5.)
The district attorney served on petitioner a set of 14 requests for admissions. The first three asked him to admit that in 1993 he was convicted of three counts of violation of Penal Code section 288, subdivision (a) (lewd and lascivious acts on a child under 14) against three named children. Requests 4 through 7 asked petitioner to admit he engaged in certain explicit acts with the victims, including penetration of one child's vagina and masturbation of the other two children. The next three requests asked him to admit his conduct with the three children "constituted substantial sexual conduct as defined in Welfare and Institutions Code [section] 6600.1" (Italics omitted.) Requests 11 and 12 asked petitioner to admit that, in 1974 a court found him to be "a Mentally Disordered Sex Offender pursuant to Welfare and Institutions *514 Code [section] 6300 et seq.," and that he "currently ha[s] a diagnosed mental disorder as defined by Welfare and Institutions Code [section] 6600[, subdivision] (d)." The final two requests asked petitioner to admit that, "based on [his] diagnosed mental disorder," he is "likely to engage in sexually violent predatory criminal behavior" and "there is a serious, well-founded risk that [he] will engage in sexually violent predatory criminal behavior."
Petitioner objected to each request on the ground that it addressed either an ultimate issue or an ultimate circumstance or fact and sought "to deny [him] . . . his right to a jury trial without a waiver . . . ." He also filed a motion for a protective order. The essence of his argument was that use of requests for admissions, the effect of which is to eliminate the need for proof, would deprive him of his right to a jury trial requiring proof beyond a reasonable doubt and a unanimous verdict. The court denied the motion.
Petitioner sought writ relief, asserting the same arguments. Initially we denied the petition summarily. The California Supreme Court granted petitioner's petition for review and remanded the matter back to this court to consider the case on the merits.

DISCUSSION

1. The Act
The purpose of the Act "is to identify persons who have certain diagnosed mental disorders that make them likely to engage in acts of sexual violence and to confine [them] for treatment of `their disorders only as long as the disorders persist and not for any punitive purposes.' [Citation.]" (Bagration v. Superior Court (2003) 110 Cal.App.4th 1677, 1683, 3 Cal.Rptr.3d 292 (Bagration).) To commit a person under the Act, the state must prove "(1) [that] the person . . . `has been convicted of a sexually violent offense against two or more victims' [citation]; and (2) [that] the person `has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' (Welf. & Inst.Code, § 6600, subd. (a)(1).)" (People v. Superior Court (Cheek) (2001) 94 Cal.App.4th 980, 989-990, 114 Cal.Rptr.2d 760 (Cheek).) A sexually violent offense includes a violation of Penal Code section 288, subdivision (a) if the victim is under 14 years of age and the wrongful act "involved substantial sexual conduct . . . ." (Welf. & Inst.Code, § 6600.1, subd. (a); see also § 6600, subd. (b).)
A proceeding under the Act is "[a] special proceeding of a civil nature. . . ." (Cheek, supra, 94 Cal.App.4th at p. 988, 114 Cal.Rptr.2d 760.) Because a person may be confined, the Act provides certain safeguards normally associated with criminal actions, including appointed counsel if indigent, proof beyond a reasonable doubt, the right to a jury trial, and a unanimous verdict if there is a jury. (Welf. & Inst.Code, §§ 6603, subds. (a), (b), (e) & (f), 6604.) Unlike in criminal cases, however, the right to a jury trial is statutory, not constitutional. (Welf. & Inst.Code, § 6603, subd. (a); People v. Rowell (2005) 133 Cal.App.4th 447, 451-452, 34 Cal.Rptr.3d 843.) Further, there is no "guarantee against compulsory self-incrimination" under the Fifth Amendment (People v. Leonard (2000) 78 Cal.App.4th 776, 791, 93 Cal.Rptr.2d 180), and the state may call the person as a witness (id. at p. 792, 93 Cal.Rptr.2d 180).

2. Requests for Admissions
Although requests for admissions are included in the Code of Civil Procedure *515 among discovery procedures (Code Civ. Proc., § 2019.010, subd. (e)), they "differ fundamentally from other forms of discovery. Rather than seeking to uncover information, they seek to eliminate the need for proof. [Citation.]" (Stull v. Sparrow (2001) 92 Cal.App.4th 860, 864, 112 Cal.Rptr.2d 239; see also Jahn v. Brickey (1985) 168 Cal.App.3d 399, 404, 214 Cal.Rptr. 119 ["Admissions are more than a mere discovery device. They also serve a function similar to the pleadings in a lawsuit in that they are `aimed primarily at setting at rest a triable issue so it will not have to be tried.'"].)
As a general rule an admission is conclusive in the action as to the party making it. (Code Civ. Proc., § 2033.410, subd. (a); Scalf v. D.B. Log Homes, Inc. (2005) 128 Cal.App.4th 1510, 1522, 27 Cal.Rptr.3d 826; see also Lackner v. North (2006) 135 Cal.App.4th 1188, 1203, fn. 6, 37 Cal.Rptr.3d 863.) Absent leave of court to amend or withdraw the admission, no contradictory evidence may be introduced. (See Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc. (1988) 205 Cal.App.3d 442, 451-455, 252 Cal.Rptr. 573; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) ¶ s 8:1387, 8:1388, p. 8G-31.) This is not always true for answers to interrogatories or deposition testimony. (Code Civ. Proc., §§ 2025.620, 2030.410; see, e.g., Scalf v. D.B. Log Homes, Inc., supra, 128 Cal.App.4th at p. 1522, 27 Cal. Rptr.3d 826 ["For summary judgment purposes, deposition answers are simply evidence . . . considered and weighed in conjunction with other evidence. They do not constitute incontrovertible judicial admissions as do . . . answers to requests for admissions"]; McLaughlin v. Sikorsky Aircraft (1983) 148 Cal.App.3d 203, 210, 195 Cal.Rptr. 764[when expert testified at trial contrary to deposition testimony, opposing party allowed to bring in new expert.)

3. Civil Discovery Under the Act
Cases have held that the Civil Discovery Act applies in commitment proceedings under the Act. In Leake v. Superior Court (2001) 87 Cal.App.4th 675, 104 Cal.Rptr.2d 767, disapproved on another ground in People v. Yartz (2005) 37 Cal.4th 529, 537, 36 Cal.Rptr.3d 328, 123 P.3d 604, the court determined the potential committee was entitled to the exchange of expert witness information. (Leake v. Superior Court, supra, 87 Cal.App.4th at pp. 682-683, 104 Cal.Rptr.2d 767.) In so doing, it reasoned that when the Legislature "enacted the [Act] as a . . . special proceeding of a civil nature," it knew the Civil Discovery Act applied to such proceedings and intended discovery to apply. (Id. at p. 680, 104 Cal.Rptr.2d 767; see People v. Yartz, supra, 37 Cal.4th at p. 537, fn. 4, 36 Cal. Rptr.3d 328, 123 P.3d 604; Code Civ. Proc., §§ 2016.020, subd. (a), 2017.010.) Cheek held that depositions were authorized in proceedings under the Act. (Cheek, supra, 94 Cal.App.4th at p. 983, 114 Cal. Rptr.2d 760.) No case, however, has addressed whether requests for admissions may be used in proceedings under the Act.
The district attorney relies heavily on Cheek in support of the claim that requests for admissions are an appropriate discovery device. But, despite its holding that depositions are authorized, much of Cheek's analysis serves to support our decision. First, it noted that "the primary purpose of discovery [under the Act] most likely will be to assist the parties in preparing for trial, and, to a lesser extent, to assist the parties in case evaluation and settlement." (Cheek, supra, 94 Cal. App.4th at p. 989, 114 Cal.Rptr.2d 760.) We are not persuaded by the district attorney's contention these goals are achieved *516 through use of requests. "The primary purpose of requests for admissions is to expedite trial. [Citation.]" (Barnett v. Penske Truck Leasing Co. (2001) 90 Cal. App.4th 494, 499, 108 Cal.Rptr.2d 821.) Although their use may ultimately decrease trial preparation time, that clearly is not their focus.
Cheek also strongly emphasized the trial court's role in managing discovery, mentioning it at least five different times. (Cheek, supra, 94 Cal.App.4th at pp. 988, 991, 993, 994, 996, 114 Cal.Rptr.2d 760.) It noted that because "discovery procedures are subject to misuse," the statute enabled the court to "limit discovery where appropriate. [Citations.]" (Cheek, supra, 94 Cal.App.4th at p. 991, 114 Cal.Rptr.2d 760, fns. omitted.; see Code Civ. Proc., § 2019.030.) It also provided that employment of discovery under the Act was to be "on a case-by-case basis." (Cheek, supra, 94 Cal.App.4th at p. 994, 114 Cal.Rptr.2d 760.) Thus, Cheek's permission to use discovery was conservative and constrained. Our determination that requests for admissions are an unsuitable tool is consistent with Cheek's obvious hesitancy in giving free rein to discovery.
Bagration, supra, 110 Cal.App.4th 1677, 3 Cal.Rptr.3d 292, although not dealing with discovery issues, also supports our decision. It held that summary judgments may not be used in proceedings under the Act. There, where the potential committee brought the motion, the court observed that Code of Civil Procedure section 437c contemplates the mutual use of motions for summary judgment, but in the context of proceedings under the Act, "unlike reciprocal Civil Discovery Act procedures," there can be no mutuality because the process could not be used by the district attorney. This made summary judgments "inherently inconsistent" with the Act. (Bagration, supra, 110 Cal.App.4th at pp. 1688, 1689, 3 Cal.Rptr.3d 292.) Likewise, contrary to other discovery, there is little likelihood of mutuality or reciprocity in the use of requests for admissions under the Act. It is difficult to conceive of requests a potential committee might propound that would serve any practical purpose.
Bagration emphasized that summary judgment "cut[s] through the parties' pleadings . . . to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]." (Bagration, supra, 110 Cal.App.4th at p. 1687, 3 Cal.Rptr.3d 292.) Requests for admissions perform a similar function, potentially eliminating the need for a trial if all requests are admitted. Bagration pointed out that summary judgment, if permitted, would "potentially supplant [the] Act's probable cause hearing and trial." (Id. at p. 1688, 3 Cal.Rptr.3d 292.) The same could be true were we to direct petitioner to respond to requests for admissions.

4. Requests for Admissions Prohibited Under the Act
Petitioner contends that, despite the general applicability of civil discovery, requiring him to respond to requests for admissions would violate his due process rights and eliminate safeguards against improper confinement. If he admitted each request there would be no issue left for a jury to determine. This, he concludes, violates his right to a jury trial requiring a unanimous verdict based on proof beyond a reasonable doubt. On the other hand, he continues, if he denied them, his credibility could be challenged at trial and he could face cost-of-proof sanctions. He maintains he should not be subjected to such detriment merely for exercising his right to have the district attorney prove the case against him.
*517 "Because civil commitment involves a significant deprivation of liberty, a defendant in [a] proceeding [under the Act] is entitled to due process protections. [Citation.]" (People v. Otto (2001) 26 Cal.4th 200, 209, 109 Cal.Rptr.2d 327, 26 P.3d 1061.) Under the Act, however, "due process . . . is not measured by the rights accorded a defendant in criminal proceedings, but by the standard applicable to civil proceedings . . . ." (People v. Superior Court (Howard) (1999) 70 Cal.App.4th 136, 154, 82 Cal.Rptr.2d 481.) That means "`only that the procedure adopted comport with fundamental principles of fairness and decency. The due process clause of the Fourteenth Amendment does not guarantee to the citizen of a state any particular form or method of procedure.' [Citation.]" (In re Parker (1998) 60 Cal.App.4th 1453, 1462, 71 Cal.Rptr.2d 167.)
Petitioner faces "significant limitations on [his] liberty, the stigma of being classified as a [sexually violent predator], and subjection to unwanted treatment. [Citation.]" (People v. Otto, supra, 26 Cal.4th at p. 210, 109 Cal.Rptr.2d 327, 26 P.3d 1061.) These serious consequences militate against a potentially adverse judgment being rendered without having the district attorney prove the case beyond a reasonable doubt and obtain the verdict of a unanimous jury.
The requests propounded to petitioner, if admitted, would satisfy each element supporting his commitment. The first 10 would prove he was convicted of sexually violent acts against multiple victims (Welf. & Inst.Code, § 6600, subd. (a)(1)); the last four would establish he would be dangerous to society based on a diagnosed mental disorder that makes it likely he would commit sexually violent crimes (ibid.). Admitting the requests would impede petitioner's ability to present his side of the story because he would be prohibited from introducing any contrary evidence, including his own testimony explaining his actions and mental state.
The district attorney contends that, assuming all the requests were admitted, petitioner nevertheless would not be deprived of a jury trial because discovery "contains no mechanism for terminating the . . . right to a jury trial." But empanelling a jury, introducing the admissions into evidence, instructing jurors they could not deviate from the facts admitted, and sending them to deliberate and return a verdict would be a charade and exalting form over substance.
People v. Cosgrove (2002) 100 Cal.App.4th 1266, 123 Cal.Rptr.2d 535 banned directed verdicts in a proceeding under the mentally disordered offender statute (Pen. Code, § 2962 et seq.) because they conflicted with statutory language requiring a jury trial unless waived by both parties. (People v. Cosgrove, supra, 100 Cal.App.4th at pp. 1274-1275, 123 Cal.Rptr.2d 535.) That the process is "civil in nature" (id. at p. 1273, 123 Cal.Rptr.2d 535) does not matter because the standard of proof is beyond a reasonable doubt and a unanimous verdict is required if a jury is the trier of fact. (Ibid.) The consequence of having a potential committee admit every element of the district attorney's case would likewise deprive the jury of any real consideration of evidence. Thus, although a jury would be charged with making a decision, in reality, the result would not differ from a case where the jury was directed to enter a specific verdict.
In an alternative argument the district attorney devotes several pages of the answer to demonstrate how petitioner could avoid admitting the requests. But if, as the district attorney virtually acknowledges, a potential committee is expected to deny the most troubling requests, that is, those conceding he has a current, diagnosed *518 mental disorder making it likely he will again commit sexually predatory criminal acts, there is little point in propounding them. At oral argument the district attorney was unable to provide a reason to do so other than for impeachment. We do not view the potential for setting petitioner up to be impeached as a sufficient basis to force him to potentially forego his right to have the issues fully litigated.
Further, at one point the district attorney states that "[n]othing forces the [petitioner] to admit any (much less all) of the [requests], even if obviously true." But Code of Civil Procedure section 2033.210, subdivision (a) requires the responses to be under oath. We cannot endorse what may be a suggestion that petitioner retain his right to due process by perjuring himself.
A foundational purpose of the Civil Discovery Act is to avoid gamesmanship in litigation. (Emerson Electric Co. v. Superior Court (1997) 16 Cal.4th 1101, 1107, 68 Cal.Rptr.2d 883, 946 P.2d 841.) We will not sanction the use of devices that defeat this premise by encouraging petitioner to engage in maneuvers designed to avoid the impact of the statutory scheme.
An additional factor militating against the use of requests for admissions is the possibility of cost-of-proof sanctions, authorized under Code of Civil Procedure section 2033.420 when, without a reasonable basis, a party denies a material request that is subsequently proved to be true. Using request No. 12 ("Admit that you currently have a diagnosed mental disorder as defined by Welfare and Institutions Code § 6600[, subd.] (d)," italics omitted) as an example, petitioner posits that if he denies the request and then is unable to obtain an expert to testify he does not currently have a diagnosed mental disorder, he will be subject to such sanctions. If he is unable or unwilling to take that risk, he is put in the untenable position of having to admit the request, even if he does not believe it to be true.
Cost-of-proof sanctions are a risk, despite the district attorney's statement during oral argument that they would not be sought in this case. This assurance does not mean this or another district attorney would not do so in other cases. And the additional argument that, because sanctions are awarded posttrial, they do not interfere with petitioner's right to a jury rendering a unanimous verdict is also without merit. It is the threat of these sanctions that could cause a potential committee to admit requests that are not true because he or she will not have contrary evidence for trial.
The alternative is to ban requests for admissions. We acknowledge the "strong government interest in protecting the public from those who are dangerous and mentally ill." (People v. Otto, supra, 26 Cal.4th at p. 214, 109 Cal.Rptr.2d 327, 26 P.3d 1061.) Admittedly, requests for admissions could serve to narrow the issues required to be proven, thus fulfilling that interest. But because requests could completely eliminate the need for any proof, the benefit to the district attorney is outweighed by the detriment to a potential committee. Insisting that the district attorney prove all of the elements at trial, rather than allowing requests for admissions, is not so onerous that it should checkmate a person's due process rights.

5. Conclusion
Requiring petitioner to respond to requests for admissions would violate his due process rights of proof beyond a reasonable doubt, a jury, and a unanimous verdict. In balancing the competing interests of the state versus an individual, we must lean more heavily in favor of a person *519 threatened with the loss of liberty. The Act and cases interpreting it have set out procedural safeguards to protect a person's right to due process; a ban on requests for admissions is consistent with effecting those protections.
We considered and rejected a limit on the ban on requests for admissions to those going to the ultimate issues in a case. First, it is unlikely requests would be propounded that did not go to ultimate issues. Second, it would create uncertainty, and thus more litigation, as to whether a request went to an ultimate issue.

DISPOSITION
The petition is granted. Let a writ of mandate issue directing the trial court to vacate its order denying petitioner's motion for protective order and issue a new order granting the motion. Real party in interest's requests for judicial notice and to file an exhibit under seal are denied because the documents are not relevant to our decision.
WE CONCUR: O'LEARY and IKOLA, JJ.