Filed 3/1/13  P. v. Luna CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037527 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 171019) |
| v. | |
| BELLO LEE LUNA, | |
| Defendant and Appellant. | |

Defendant Bello Lee Luna challenges the trial court's order extending his commitment as a mentally disordered offender (MDO).  He contends that the trial court prejudicially erred in failing to advise him of his right to a jury trial and obtain his personal waiver of that right.  We affirm.

**I.  Background**

A petition to extend Luna's commitment was filed in June 2011.  Luna had suffered prior convictions for criminal threats and false imprisonment, and he originally had been committed as an MDO in 1995.  His commitment had been repeatedly extended since then.  Luna was not present at the first hearing on the petition on June 15, 2011, but he was represented by counsel.  The same was true at three subsequent hearings in June and July.

Luna also was not present at a hearing on August 19, 2011. The following colloquy occurred at the August hearing. "THE COURT: . . . And it's my understanding the respondent is asking for a trial. He's waiving jury; correct? [¶] MR. SHARKEY [Luna's counsel]: That's right, Your Honor." The prosecutor also waived jury trial. The trial was set for October 24.

Luna was present at the October 24, 2011 trial. At the outset, the court stated that "this is an agreed-upon court trial for extension of his MDO status, I believe." The prosecutor confirmed as much, and Luna's trial counsel affirmed that he was ready to proceed. Luna said nothing.

The sole witness at the trial was Dr. Mendel Feldsher. Feldsher, a psychiatrist, testified as an expert on diagnosis and treatment of mental disorders and on risk assessment. Luna's trial counsel did not challenge Feldsher's expertise.

Feldsher testified that he had interviewed Luna, reviewed his records, and consulted with Luna's current treating psychiatrist. In his expert opinion, Luna posed "a substantial risk of physical harm to others by reason of his severe mental disorder." Feldsher found the "most consistent" diagnosis to be that Luna was a paranoid schizophrenic. Although Luna had also been previously diagnosed with schizoaffective disorder bipolar type, Feldsher found no evidence in Luna's records of "a discrete manic episode or depressive episode" even though there was evidence that Luna had experienced "some significant depressive symptoms." While schizoaffective disorder might also be an appropriate diagnosis, Feldsher simply did not find enough evidence in the records to support that diagnosis at this time.

Feldsher explained the basis for his opinion that Luna posed a substantial risk of physical harm to others. Luna experienced "paranoid delusional beliefs." Luna told Feldsher that Luna was "being held hostage" by hospital staff to "make money" for the state. Luna also told Feldsher "that I should be scared for my wife and for myself if I

2

were to be involved in -- as an agent against him is how he described it." Luna had previously made threats to three other psychiatrists at Napa State Hospital.

Luna's underlying convictions were based on a threat to the life of a social worker and the commission of an attempted rape at knifepoint. He also had a significant criminal history as a juvenile when he had been found carrying a concealed weapon on four occasions. He had also been convicted of stabbing a man in the abdomen in a bar. Feldsher found the recurring theme of stabbing people with knives particularly troubling. This was especially true in light of the fact that Luna had been found in possession of two shanks in November 2010 at Napa State Hospital, and he had stated at the time that he wanted "to kill somebody." In January 2011, Luna threatened to stab his psychiatrist, and he was again found in possession of two shanks. In August 2011, Luna was observed "in a fighting stance with another peer and he told staff 'I'm going to get him.'"

Luna was subject to an involuntary medication order, and he told Feldsher that he believed he did not need psychiatric medications "whatsoever." He also did not believe that he suffered from a mental disorder. He had "no insight whatsoever." Luna refused to participate in any treatment, refused "lab draws," and sometimes refused to shower. Luna was not willing to consider "cooperat[ing] with CONREP."

Luna's trial counsel's brief cross-examination attempted to show that Feldsher had only a limited knowledge of Luna based solely on a single interview of Luna, reports, and consultation with Luna's current treating psychiatrist, who had been treating Luna for only a short time.

The entire trial lasted 23 minutes. Both attorneys submitted the matter without argument. The court found the petition true and ordered Luna's commitment extended for one year. Luna timely filed a notice of appeal.

## II.  Analysis

Luna's sole appellate contention is that the trial court prejudicially erred in failing to advise him of his statutory right to a jury trial and obtain a personal waiver of that right.

"The court shall conduct a hearing on the petition under Section 2970 for continued treatment.  The court shall advise the person of his or her right to be represented by an attorney and of the right to a jury trial. . . .  [¶]  . . . The trial shall be by jury unless waived by both the person and the district attorney."  (Pen. Code, § 2972, subd. (a).)  "If the court or jury finds that the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others, the court shall order the patient recommitted . . . ."  (Pen. Code, § 2972, subd. (c).)

The record before us does not establish that the trial court complied with its statutory obligation to advise Luna of his right to a jury trial or that it obtained his personal waiver of that right.  Nevertheless, Luna cannot establish that reversal of the court's order is required.

Even if we assume that Luna personally would not have waived his right to a jury trial if he had been advised by the court of that right, a doubtful proposition, this right is purely statutory.  (*People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1276 (*Cosgrove*).)  Consequently, the applicable standard of harmless error review is "whether it is reasonably probable that a result more favorable to defendant would have been reached absent the error."  (*Ibid*.)  Where the evidence supporting the order is overwhelming, this standard cannot be satisfied.  (*Ibid*.)  Luna acknowledges that this is the appropriate standard, and he makes no attempt to distinguish *Cosgrove*, where the deprivation of a jury trial was found harmless.  (*Ibid*.)

4

Here, the evidence presented at trial was so overwhelming that it is inconceivable that a jury would have reached a result more favorable to Luna. Feldsher's testimony was unrebutted, and it established beyond any doubt that Luna suffers from a severe mental disorder that is not in remission. Luna is a paranoid schizophrenic who may also suffer from schizoaffective disorder. He denies that he has a mental illness, denies that he requires medication, and takes medication only due to a court order. Even with medication, he suffers from delusions and continues to threaten violence against his peers, staff, and particularly psychiatrists. He indisputably poses a substantial danger of physical harm to others. Although he is confined in a state hospital, he has repeatedly obtained deadly weapons and made threats to use them to kill others. Based on this evidence, no jury could have concluded other than that Luna is severely mentally ill and poses a very high danger of physical harm to others. It follows that the absence of a jury trial advisement and personal waiver did not prejudice Luna.

Luna contends that the failure to advise and obtain a personal waiver deprived him of due process. He relies on *In re Gary W.* (1971) 5 Cal.3d 296 (*Gary W.*). *Gary W.* involved an extension of a ward's youth authority commitment due to his dangerousness. The ward contended that he was entitled under due process and equal protection to a jury trial on the commitment petition. (*Gary W.*, at p. 303.) The crux of his contention was that there was no adequate basis for distinguishing dangerous wards from mentally disordered sex offenders (MDSOs), narcotics addicts, and "dangerous persons" with respect to the jury trial right. (*Gary W.*, at pp. 303-304.) The California Supreme Court agreed and found that there was no compelling justification for distinguishing between these various prospective civil committees with respect to the fundamental jury trial right. Since the others were granted a statutory right to a jury trial, wards too were entitled to such a right as a matter of equal protection. (*Gary W.*, at pp. 305-307.) *Gary W.* has no application here. Luna's right to equal protection was not abridged because he, like other prospective civil committees, had a statutory right to a jury trial. *Gary W.* said nothing

5

about the appropriate error standard to apply in such cases.  Luna's reliance on *People v. Burnick* (1975) 14 Cal.3d 306 (*Burnick*) is also misplaced.  *Burnick* was an MDSO case.  The court held that due process required proof beyond a reasonable doubt.  (*Burnick*, at pp. 314, 318.)  No issue was raised regarding the right to a jury trial, as that right was statutorily provided.  Nor can Luna establish an equal protection violation, as he, like other prospective civil committees, has a statutory right to a jury trial.  No distinction was drawn against him.

Luna was not prejudiced by the trial court's failure to advise him of his right to a jury trial or to obtain a personal waiver of that right.

## III.  Disposition

The order is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Premo, Acting P. J.

_____
Márquez, J.

6