Filed 3/7/14  P. v. Holiday CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PEOPLE, | D063985 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS183939) |
| JASON MICHAEL HOLIDAY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Eric A. Swenson and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Jason Michael Holiday appeals from an order extending his commitment to the State Department of State Hospitals, formerly the State Department of Mental Health (Department), as a mentally disordered offender (MDO) (Pen. Code, § 2960 et seq.).[1] He contends we must reverse the order and remand the matter for further findings because the court applied the wrong standard of proof to its determination he could not be safely and effectively treated on outpatient status. We conclude the error was harmless and affirm the order.

BACKGROUND

*People's Evidence*

In 2004 Holiday pleaded guilty to assault by means of force likely to produce great bodily injury (§ 245, subd. (a).). The following year, as a condition of parole, he was committed to the Department as an MDO (§ 2962). His parole ended in May 2008 and his commitment to the hospital was extended annually from then to May 2013 (§§ 2970, 2972).

*Dr. Nicole Friedman's Testimony*

In January 2013 the People petitioned to extend his commitment another year. At a trial on the petition, psychologist Dr. Nicole Friedman testified she evaluated Holiday, reviewed his mental health records, and reviewed the records related to his underlying offense. Based on this information, she diagnosed him with schizoaffective disorder,

---

[1]    Further statutory references are also to the Penal Code unless otherwise stated.

2

bipolar type. Among his symptoms were mood swings, delusions, ideas of grandiosity, tangential thinking, pressured speech, disorganized behavior, hypersexuality, and poor hygiene. He was also experiencing auditory hallucinations and believed he had religious powers.

During Dr. Friedman's evaluation, Holiday insisted on showing her an invention he made from a milk carton, popsicle sticks, and a staple. He told her the invention was a registered computer and it could both cure cancer and help a woman get pregnant. He also told her he could earn a living by selling staples for 50 cents if he was released. In addition to being out of touch with reality, he was easily agitated and admitted getting upset during an evaluation with psychologist Dr. Lauren S. Thomas (described *post*). His inability to regulate his behavior in a controlled setting indicated he had poor insight into his behavior.

Dr. Friedman noted Holiday takes medication for his disorder, which has "helped him to some degree" because "his assaultive behavior has declined . . . over the years." However, he did not always comply with his medication regimen and seven months before trial, he was caught stockpiling pills. After that, his pills were crushed to ensure he was taking them.

Dr. Friedman explained Holiday's behavior deteriorates when he does not take his medication. Around the time he was caught stockpiling medication, he attacked another patient and had to be put in restraints. More recently, within four months before trial, he had to be restrained for threatening hospital staff.

3

Dr. Friedman described Holiday's participation in therapy as "not highly compliant."  He attended therapy sessions approximately 32 percent of the time.

In addition to schizoaffective disorder, Holiday also had antisocial personality disorder and rated "severe" on an assessment measuring psychopathy.  People with this rating demonstrate glibness, a grandiose sense of self-worth, pathological lying, manipulation, a lack of remorse or guilt, a lack of empathy, a shallow affect, callousness, and failure to accept responsibility for their actions.

Dr. Friedman believed Holiday's mental disorder was not in remission because he was not consistently compliant with his medication, he was not attending therapy sessions, and he did not demonstrate an understanding of or maintain a regular schedule of self-care for his mental illness.  Moreover, in the year preceding the trial, he had been assaultive, he threatened his peers and hospital staff, and he demonstrated through delusions and grandiosity that he was not in touch with reality.

Dr. Friedman believed Holiday was a danger to others.  She based this belief on his lack of insight into his behavior's effect on others and his failure to understand he needed medication to control his behavior and impulsivity.

When Dr.  Friedman discussed a supervised release program with Holiday, he had no interest in the program.  She viewed his lack of interest as confirmation he did not have a full understanding of his diagnosis and believed he could be immediately released "into the community without any step-down type of program to help him monitor and self-care for himself."  She believed if he were immediately released into the community,

4

he would not comply with his medication regimen and would start abusing controlled substances again.

*Dr. Thomas's Report*

The parties stipulated to the admission of a report prepared by Dr. Thomas. The report was of an evaluation occurring a little over a month before trial. Like Dr. Friedman, Dr. Thomas diagnosed Holiday with schizoaffective disorder, bipolar type. She also diagnosed him with polysubstance abuse not otherwise specified and antisocial personality disorder.

In her report, Dr. Thomas noted Holiday had a lengthy history of both inpatient and outpatient psychiatric treatment. Historically, his psychiatric symptoms have included auditory hallucinations, mood swings, grandiosity, delusions, disorganized and tangential thought processes, pressured and rambling speech, assaultive and bizarre behavior, and poor hygiene. During her evaluation of him, he demonstrated "perceptual disturbances in the form of 'good voices' " as well as rambling speech and "grandiose delusions about the cure for cancer and a device he invented which 'helps locate life on other planets.' "

Dr. Thomas believed Holiday did not have insight "relative to his behavior that could lead to violence," and his compliance with psychiatric treatment was inadequate. His participation in group therapy was approximately 38 percent, rather than the required 80 percent. In addition, he sometimes refused medication and approximately four months before trial he was caught stockpiling medication.

5

Of further concern to Dr. Thomas, Holiday had a significant history of substance abuse, but did not like to attend Narcotics Anonymous or Alcoholics Anonymous programs because they were against his religious beliefs. She believed it was "likely that in a less structured environment in the community he would relapse into substance abuse," which "would most likely exacerbate the symptoms of his severe mental disorder."

Dr. Thomas also noted Holiday had a history of violence and inappropriate behavior toward hospital staff, including threatening to kill staff, hostility, and open masturbation. Twice, approximately four months before trial he was placed in restraints for threatening hospital staff. On another occasion within the same time frame, he "presented with 'anger toward women and predator-like behaviors.' " When she attempted to discuss these incidents with him, he became agitated and loudly denied any threatening conduct. After unsuccessfully attempting numerous times to calm him down, she had to end the interview.

On the question of whether Holiday could be safely and effectively treated on an outpatient basis, Dr. Thomas unequivocally responded that he could not. She explained, "In order to be a candidate for outpatient treatment through [a supervised release program], an individual must demonstrate a period of psychiatric stabilization, combined with a willingness to be compliant with a treatment plan. Additionally, one must demonstrate the ability to refrain from threatening behavior or physical violence, attend substance abuse treatment, if applicable, and must agree to [supervised release program] placement. [¶] [Holiday] has stated he would continue taking medications if he were in

6

the community and he does not desire or plan to participate in outpatient treatment or [a supervised release program]. [¶] Due to the above-stated reasons, [Holiday] is not an appropriate candidate for outpatient treatment at this time. He continues to require the highly structured and secure treatment environment of the hospital."

*Holiday's Evidence*

Holiday testified on his own behalf. When asked whether he believed he had a mental disorder or illness, he rambled a bit about various diagnoses doctors had given him over the years and said, he "guess[ed] they know they they're saying" and "guess[ed] it might be true, yeah." When asked about his medication regimen, he said he voluntarily took medication and would continue taking it if released. He explained he would live with his mother and get his medication from a local mental hospital. When asked whether he needed and would continue therapy if released, he said he would probably get a job.

Regarding the reports of recent violent incidents, he explained he once raised his voice after hospital staff took his bandana away from him without cause and was strapped to a chair for 10 to 15 minutes until he calmed down. In a separate incident, another patient offered him a sandwich and then hit him when he went to get it. The two men starting fighting and then the other patient ran away. He said he did not get into any trouble for the incident because the hospital staff witnessed it.

Regarding his failure to take medication, he said one time he did not take his blood pressure medication. Otherwise, he took all of his medication. He also said he went to all of his therapy sessions, except "maybe three or four."

7

*Court's Decision*

After considering the parties' evidence and arguments, the court found the People proved beyond a reasonable doubt Holiday suffered from a severe mental disorder that was not in remission or could not be kept in remission without treatment and, because of the disorder, he posed a substantial danger of physical harm to others. The court further found he had "failed to prove by a preponderance of the evidence that he no longer [represents] a substantial danger of physical harm to others because he is now taking medication that controls his medical condition. In this matter, I think that it's not in your best interest to keep you in an unsupervised environment."[2] Consequently, the court ordered his commitment to the state hospital extended to May 2014.

## DISCUSSION

Following a trial on a recommitment petition, a court shall order a patient recommitted for one year if the trier of fact finds "that the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others." (§ 2972, subd. (c).) However, the court shall release the patient on outpatient status if the "court finds that there is reasonable cause to believe that the [patient] can be safely and effectively treated on an outpatient basis." (§ 2972, subd. (d).) The patient bears the burden of establishing entitlement to release under section 2972, subdivision (d). (*People v. Gregerson* (2011)

---

2    The court's remarks match almost verbatim statements contained in the "Summary of the MDO Law" section of the People's trial brief.

8

202 Cal.App.4th 306, 310, 316 (*Gregerson*).)  Since the standard of proof is " 'reasonable cause,' " a "court shall order outpatient treatment if the patient raises a strong suspicion in a person of ordinary prudence that outpatient treatment would be safe and effective."  (*Id.* at pp. 310, 317, 319.)

Holiday contends we must reverse the court's order and remand the matter for further findings because the court applied the wrong standard of proof to its determination he could not be safely and effectively treated on outpatient status.  More particularly, the court applied the "preponderance of the evidence" standard rather than a "reasonable cause" standard.  The People concede the error, but assert it was harmless. We agree.

A court may, but generally has no duty to, sua sponte consider a patient's amenability to outpatient treatment.  (*Gregerson*, *supra*, 202 Cal.App.4th at p. 315 & fn. 3; *People v. Rish* (2008) 163 Cal.App.4th 1370, 1382-1384; *People v. May* (2007) 155 Cal.App.4th 350, 359.)  Nonetheless, having apparently considered the matter here, the court was obliged to apply the correct standard of proof.  Although the court erred in this respect, we conclude the error was harmless under any standard.  (See *People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1275-1276 [harmless error test articulated in *People v. Watson* (1956) 46 Cal.2d 818 applies to a violation of a statutory right in a civil commitment proceeding]; but see *People v. Hill* (2013) 219 Cal.App.4th 646, 652-653 [harmless error test articulated in *Chapman v. California* (1967) 386 U.S. 18 applies to a violation of a statutory right in a civil commitment proceeding where the statutory right is protected by the federal due process clause].)

9

Holiday does not dispute there was sufficient evidence to support the court's findings he suffered from a severe mental disorder, the disorder was not in remission or could not be kept in remission without treatment, and he posed a substantial danger of physical harm to others because of the disorder. Indeed, the evidence on these points was overwhelming and essentially uncontroverted.

There was likewise overwhelming evidence Holiday could not be safely released into the community. Specifically, the evidence showed his mental disorder had not stabilized, he had difficulty controlling his violent behavior in a highly structured hospital setting, and he had no insight into the causes of his violent behavior. In addition, he conveyed to both Dr. Friedman and Dr. Thomas he was not interested in being released into a supervised release program and, instead, wanted an unconditional release. Both doctors agreed an unconditional release would likely lead to an exacerbation of his mental disorder.

Holiday's own testimony was not helpful to his position. When asked whether he would continue to attend therapy if released, he dodged the question and stated he planned to get a job. He also equivocated when asked whether he had a mental illness, stating he guessed he had one because his doctors told him he had one. Moreover, during his testimony, he showed active signs of mental illness, particularly when discussing his invention and the things it could do. The only evidence he offered tending to support any type of outpatient treatment was his testimony he would voluntarily continue taking his medication if released. The court implicitly found this testimony not credible and, regardless, this testimony was insufficient to meet his burden because it "does not come

10

close to addressing how [he] intended to comply with outpatient treatment and how such treatment would be safe and effective." (*People v. Rish*, *supra*, 163 Cal.App.4th at p. 1385.) Accordingly, we conclude the court's error in failing to apply the correct standard of proof does not require reversal of the court's order.

## DISPOSITION

The order is affirmed.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


McINTYRE, J.

11