Filed 3/21/13  P. v. Blackburn CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038181 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. BB304666) |
| v. | |
| BRUCE LEE BLACKBURN, | |
| Defendant and Appellant. | |

Bruce Lee Blackburn is an inmate and patient at Coalinga State Hospital, and asserts on appeal that the court erred in ordering that he be involuntarily medicated with antipsychotic drugs, because the order is vague and overbroad.

### STATEMENT OF THE FACTS AND CASE

In December 2003, appellant was convicted of burglary (Pen. Code, § 459),[1] and false imprisonment (§ 236).  As a condition of his parole in 2006, appellant was admitted as a mentally disordered offender (MDO) to Atascadero State Hospital pursuant to section 2962.  Appellant was later transferred to Coalinga State Hospital, where he remains.

In December 2011, the district attorney filed a petition pursuant to section 2972 and *In re Qawi* (2004) 32 Cal.4th 1 (*Qawi*), requesting an order to involuntarily medicate

---

[1] All further unspecified statutory references are to the Penal Code.

appellant.  The petition was accompanied by a report from appellant's treating physician, Dr. Joseph Cook, who represented that appellant had a long history of psychiatric illness dating back to 1977, that he has had approximately 15 psychiatric hospitalizations and has been on a *Qawi* order for involuntary administration of medications since 2007. Dr. Cook concluded:  "[Appellant] requires a *Qawi* order due to the fact that he demonstrates symptoms consistent with a severe mental illness, lacks insight into his psychiatric condition, and has been noncompliant with psychiatric medications.  In addition, when he is not taking psychiatric medications, he becomes more paranoid and uncooperative with his medical care which results in him becoming a substantial danger to self and/or others."

Dr. Cook testified at the section 2972 hearing that appellant was taking Risperdal for schizophrenia, but that he complained of two side effects: trembling at night and foot tapping.  Dr. Cook prescribed the additional medications of Cogentin, for the trembling, and Klonopin for the foot tapping.  In addition, Dr. Cook stated that appellant did not think his medications helped him in any way, believing that their only effect was to cause to foot tapping and night trembling.  Appellant told Dr. Cook he would not take the medications voluntarily.

At the conclusion of the hearing, the court found that appellant was not competent to make medical decisions for himself, and made the following involuntary medication order, in relevant part:  "[T]he court orders the Department of Mental Health [(Department)] to administer medication involuntarily to [appellant] for the purpose of rendering [him] safe."

## DISCUSSION

Appellant asserts that the court's order that he be involuntarily medicated is vague and overbroad, because it does not specify the medications to be given, and does not state that the medications are necessary and appropriate for appellant's treatment.

2

Individuals in custody may refuse to take antipsychotic drugs. This is inherent in the right to privacy, and is guaranteed by article I, section 1, of the California Constitution. (See *Qawi, supra,* 32 Cal.4th 1, 14.) However, the right of a person committed as an MDO "to refuse antipsychotic drugs is qualified." (*People v. Fisher* (2009) 172 Cal.App.4th 1006, 1013.) The right to refuse antipsychotic drugs "may be overcome in nonemergency situations by a judicial determination either that the person is incompetent or that he or she is dangerous within the meaning of [Welfare and Institutions Code] section 5300: '[A]n MDO can be compelled to be treated with antipsychotic medication under the following nonemergency circumstances: (1) he is determined *by a court* to be incompetent to refuse medical treatment; (2) the MDO is determined *by a court* to be a danger to others within the meaning of Welfare and Institutions Code section 5300.' " (*Ibid.*, quoting *Qawi, supra,* 32 Cal.4th at p. 27.)

In this case, the basis of the involuntary order was a finding that appellant, as an MDO was not competent to make medical decisions. "We review an order authorizing involuntary administration of antipsychotic medication for substantial evidence. [Citation.]" (*People v. Fisher*, *supra*, 172 Cal.App.4th at p. 1016.) In deciding the sufficiency of the evidence, we draw all reasonable inferences from the record to support the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) We do not weigh the evidence or decide the credibility of the witnesses. (*Ibid.*)

Here, appellant concedes that the trial court's finding that he was incompetent to refuse medical treatment was supported by substantial evidence. Appellant asserts that while the order was proper, it was vague and overbroad, and gives the Department a "blank check to medicate appellant in any way they want without any prior determination by a court that the medication is necessary or appropriate." Of particular concern to appellant is the administration of the drugs Klonopin and Cogentin to treat the side effects of Risperdal, because while Risperdal is necessary for the treatment of his

3

schizophrenia, there was no court finding that the additional drugs were medically necessary.

In arguing that the trial court was required to find the drugs prescribed to treat him were medically necessary and/or appropriate, appellant is seeking to expand the law regarding involuntary medication of MDO's to mimic that of mentally ill criminal defendants who have been deemed incompetent to stand trial. (See *Sell v. United States* (2003) 539 U.S. 166, 180-181 (*Sell*).) Specifically, to order involuntary medication for the purpose of rendering a criminal defendant competent to stand trial, the court must find the following four factors present: (1) "*important* governmental interests are at stake"; (2) taking account of less intrusive alternatives, involuntary medication will "*significantly further*" the concomitant state interests of timely prosecution and a fair trial; (3) "involuntary medication is *necessary* to further those interests"; and (4) "administration of the drugs is *medically appropriate*." (*Id.* at pp. 180-181.)

The case of *People v. Christina* (2010) 190 Cal.App.4th 1040, upon which appellant relies for his position that a finding of medical necessity or appropriateness is required for an involuntary medication order for an MDO, does not support his argument. While the *Christina* court reversed an order for involuntary medication because it did not specify the drugs and their medical appropriateness, the court recognized and explicitly mentioned that the "*Sell* factors *control only* when the sole purpose of the involuntary medication is to render the *defendant competent to stand trial;* they do *not control* if involuntary medication is justified on other bases, such as *when the defendant is dangerous* to himself or others or when the refusal to take medication puts the defendant's own health at grave risk." (*Christiana, supra,* 190 Cal.App.4th at p.1049, fn. 4, italics added.)

Where, as here, an application for involuntary medication is based on the need to treat an MDO who is not competent to make medical decisions on his own behalf, the

state need only meet the test articulated in *Qawi*. (*People v. Fisher, supra,* 172 Cal.App.4th 1006, 1015.) There is no additional requirement that the court determine the medication to be medically necessary or appropriate under *Qawi*.

As appellant concedes, there was substantial evidence to support the involuntary medication order in this case, because Dr. Cook stated that appellant suffered from schizophrenia and was a danger to others when not medicated, and was less delusional and more complaint with medical staff when he was on medication. This evidence was sufficient to support the court's order for involuntary medication; the court did not need to specify the drugs to be given, nor was it required to find those drugs medically necessary or appropriate under *Qawi*.

**DISPOSITION**

The order is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
ELIA, J.

5