Filed 5/27/15  P. v. J.S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062416 |
| v. | (Super.Ct.No. FELJS1404413) |
| J.S., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lorenzo R. Belderrama, Judge.  Affirmed as modified.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, and Julie L. Garland, Arlene A. Sevidal, and Elizabeth M. Carino, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant J.S., a mentally disordered offender (MDO) as defined by Penal Code section 2960 et seq., appeals from an order authorizing Patton State Hospital

1

to administer antipsychotic medication to her involuntarily. She argues that the order was not supported by substantial evidence. We disagree, and therefore affirm the trial court's ruling. Additionally, we correct a clerical error in the minute order, so that it accurately reflects the oral ruling of the trial court.

## I. FACTS AND PROCEDURAL BACKGROUND[1]

On March 6, 2014, defendant was committed to Patton State Hospital as an MDO. Pursuant to an administrative hearing conducted on July 30, 2014, beginning on July 16, 2014, she was medicated involuntarily on an interim basis, as allowed under California Code of Regulations, title 9, section 4210, and Penal Code section 2972, subdivision (g). Those interim proceedings authorized involuntary medication through January 26, 2015. On September 16, 2014, the Department of State Hospitals filed a petition requesting the trial court to authorize continued involuntary administration of medication for a period of one year from the date of the order.

On October 24, 2014, the trial court conducted a hearing on the petition. The court heard testimony from Dr. Shana Nguyen, who had been J.S.'s treating psychologist from July 2014 through September 2014, and had reviewed the notes of the psychologist who had taken over that responsibility as of the beginning of October 2014. Dr. Nguyen testified that defendant has a "longstanding chronic psychiatric history," and a diagnosis of "bipolar affective disorder, manic, with psychotic features," as well as substance abuse

---

[1] We do not attempt an exhaustive factual and procedural history of this case, limiting our discussion to matters either directly relevant to the issues at bar or necessary for context.

issues regarding alcohol and methamphetamine. She had found defendant's thought process to have been "very disorganized," and described her as initially "quite manic" and "easily agitated." Dr. Nguyen further observed defendant to "harbor[] a few delusions," including "somatic" delusions—meaning that she imagined she had various medical conditions—as well as persecutory delusions.

Dr. Nguyen noted that defendant had responded somewhat to the medication that had been administered to her involuntarily on an interim basis, since July 16, 2014. In particular, a new antipsychotic medication was successful in reducing defendant's symptoms of mania. But she continued to have somatic delusions, fixating in particular on having a urinary tract infection. Testing showed defendant's urine to be contaminated with feces—suggesting that she may have "intentionally smeared feces on her urethra to induce UTI," or at least that "her personal hygiene was unclean"—but showing no signs of infection. Additionally, defendant complained of side effects from medication, but there was no indication those side effects were actually occurring.

Dr. Nguyen's opinion was that defendant did not understand that mental illness affects her behavior—indeed, defendant had denied having any mental illness, and expressed the belief that she should not be on any medications. Dr. Nguyen further opined that defendant should take psychotropic medication, because there is evidence that it helps her. Dr. Nguyen believed that she would likely refuse to cooperate with a treatment program, and would attempt to manipulate any treatment regime by claiming side effects she was not in fact suffering.

The court also received testimony from defendant, who conceded that she has "anxiety," but denied having any mental illness, including bipolar disorder or paranoid delusions. She complained of a "severe allergic reaction" from her medication. And she expressed the opinion that she was not in fact being medicated to help her with her illness—stating "the meds they're giving me has [*sic*] nothing to do with me"—but rather because it was a "money oriented situation," in which she was being used as a "guinea pig" for a new drug.

## II. DISCUSSION

### A. Applicable Law

Individuals in custody may refuse to take psychotropic medication. (*In re Qawi* (2004) 32 Cal.4th 1 (*Qawi*).) However, the right of a person committed as an MDO "to refuse antipsychotic drugs is qualified . . . ." (*People v. Fisher* (2009) 172 Cal.App.4th 1006, 1013 (*Fisher*).) The right of refusal may be overcome by a judicial determination that (1) the MDO is incompetent or incapable of making decisions about his or her medical treatment, or (2) the MDO is dangerous within the meaning of Welfare and Institutions Code section 5300. (*Qawi*, *supra*, at p. 27.)

"We review an order authorizing involuntary administration of antipsychotic medication for substantial evidence." (*Fisher*, *supra*, 172 Cal.App.4th at p. 1016.) In examining the record for substantial evidence, "[o]ur sole inquiry is 'whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted,' supporting the court's finding." (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822.)

4

"'We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment.'" (*Id.* at p. 823.)

**B. Substantial Evidence Supports the Trial Court's Involuntary Medication Order**

J.S. argues the evidence is insufficient to support the trial court's involuntary medication order. We disagree.

The trial court found that defendant was incompetent or incapable of making decisions about her medical treatment. Judicial determination of whether an MDO is competent to refuse antipsychotic medication focuses on three factors: (1) whether the patient is aware of her situation; (2) whether the patient understands the benefits and risks of the treatment; and (3) whether the patient is able to understand and knowingly, intelligently, and rationally evaluate and participate in the treatment decision. (*Qawi*, *supra*, 32 Cal.4th at pp. 17-18.)

Here, there is substantial evidence that these factors each weigh in support of the trial court's finding. Dr. Nguyen testified, and defendant demonstrated through her own testimony, that she is not aware that she in fact suffers from serious mental illness. Additionally, defendant's delusions about side effects, as well as her belief that she is being medicated as a "guinea pig" for new drugs, rather than to treat symptoms of her mental illness, severely affect her ability to appropriately weigh the benefits and risks of the treatment. Defendant may well be an intelligent person, as emphasized in her briefing, but if that intelligence is misdirected by somatic and paranoid delusions, it cannot help her understand and knowingly, intelligently, and rationally evaluate and participate in treatment decisions. (*Qawi*, *supra*, 32 Cal.4th at pp. 17-18.)

5

Defendant argues that there is no evidence she ever refused all medication, only that she was refusing to take one particular medication. Dr. Nguyen testified that defendant had, with several different drugs, complained of side effects that were not observed, and that were apparently the product of somatic delusions, rather than actual side effects. Dr. Nguyen's opinion, based on her past experience with defendant, and defendant's previous statements that she should not take any medication, was that defendant was unlikely to cooperate with any treatment regime. Moreover, defendant in essence testified that she did not believe she needed any medication, denying any mental illness, and insisting that the medication being given to her had "nothing to do with [her]" but rather was being administered based on the financial motives of those treating her. The trial court's conclusion that defendant was "unwilling" to participate in her treatment by taking medications voluntarily was well grounded the evidence.

In short, the evidence was more than sufficient to support the trial court's ruling, and defendant's arguments to the contrary are rejected.

## C. The Minute Order Must Be Corrected to Accurately Reflect the Trial Court's Ruling

At the October 24, 2014, hearing, the trial court found defendant to be "incompetent or incapable of making decisions about her medical treatment." The minute order describing the trial court's ruling, however, states that she was found "to be a serious danger to others." The trial court made no such finding. The parties agree that we can, and should, correct that error. We agree. (*See, e.g.*, *People v. Mitchell* (2001) 26 Cal.4th 181, 186-187 [appellate court may correct clerical errors on its own motion or

6

upon application of the parties]; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385-386 [similar].)

### III. DISPOSITION

The minute order of October 24, 2014, is modified to strike the portion of the order describing defendant "to be a serious danger to others," and reflect the trial court's oral pronouncement that she is "incompetent or incapable of making decisions about her medical treatment." As modified, the trial court's order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>      HOLLENHORST      </u>
Acting P. J.

We concur:

<u>      MCKINSTER      </u>
J.

<u>      CODRINGTON      </u>
J.

7