Filed 5/19/16  P. v. Moore CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F069685 |
| Plaintiff and Respondent, | (Super. Ct. No. 14CRAD682000) |
| v. | |
| ARDELL MOORE, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT*

APPEAL from an order of the Superior Court of Fresno County.  Martin C. Suits, Judge.  (Retired Judge of the Kings County Sup. Ct. assigned by the Chief Justice pursuant to article VI, § 6 of the Cal. Const.)

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Kathleen Kenealy, Chief Assistant Attorney General, Julie W. Weng-Guiterrez, Assistant Attorney General, Niromi W. Pfeiffer and Karli Eisenberg, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P.J., Detjen, J. and Franson, J.

Appellant Ardell Moore, a sexually violent predator (SVP), appeals from an order requiring him to submit to involuntary administration of psychotropic medication.  We affirm the order.

## BACKGROUND

In 2001, appellant was found to be an SVP pursuant to Welfare and Institutions Code section 6600 et seq. for three sexually violent convictions in 1980 and 1987.  The superior court committed him to the Department of State Hospitals (DSH).

As relevant to this appeal, on March 27, 2014, the DSH petitioned for an order to compel appellant's involuntary treatment with psychotropic medication.

On May 19, 2014, a hearing on the petition was held.  Testimony was presented by Psychiatrist Mark Lechner and appellant.

### *Dr. Lechner*

Dr. Lechner testified that he worked as a contract psychiatrist for the DSH in Coalinga, where appellant had been his patient for about two months.  Appellant was diagnosed with schizophrenia paranoid type.  He exhibited symptoms such as disorganized and delusional thinking, in which his thoughts would ramble without coherence or coherent conclusions.  His current treatment with risperidone had lessened his symptoms.

Appellant was currently subject to an involuntary medication order.  He had denied having mental illness and stated he was being improperly medicated.

When appellant's involuntary medication order lapsed in 2013, he went off medication for a period of several months, during which he experienced increased symptoms with disorganized behavior.  When the involuntary medication order was reinstated, he regained control of his behavior.

Dr. Lechner thought appellant's insight into his mental illness was quite poor.  Dr. Lechner believed appellant would refuse his medication if given a choice.  Appellant

2

had told his previous psychiatrist that he would not take medication. Dr. Lechner thought appellant lacked the capacity to effectively weigh the risks and benefits of medication. When appellant was asked what symptoms his medication was treating, he was unable to answer. Dr. Lechner believed the benefits appellant received from his medication absolutely outweighed the risks. Dr. Lechner had not witnessed any side effects from the medication in appellant, and appellant had denied experiencing any.

*Appellant*

Appellant testified that he was being treated for paranoid schizophrenia. He said he "pretty much" agreed with his treatment. He could have gotten involved in groups and programs, but he was too busy. He was feeling "pretty much active and calm and pretty sociable. And pretty much knowledgeable about the situation and very much intelligent to the point [he knew] right from wrong, and … function[ed] pretty well." When asked if he credited his medication for his good functioning, he answered, "Um—I—I think it got something to do with self-confidence. The behavior thing. And the reality of it is to be on my best behavior and be normal so that way I won't suffer the consequences, because if I do wrong, hurt somebody, I will be responsible for my own actions. And I try not to put myself in the situation where I would be—well, most likely regretting whatever happens and the outcome if I do anything else, so I don't do nothing wrong." When asked if he thought the medications helped him control his behavior, he said, "It is—it is [the] individual self. If he wants to do right, he will do right. If he wants to do wrong, he will do wrong. And I choose to do what is right and I want to do what is right." He stated that he did not remember refusing his medication within the past year or two. He said he did not currently refuse his medication, and he would continue taking the same medication and dosage even without an involuntary medication order.

*Court Ruling*

The superior court found that appellant lacked the capacity to refuse treatment, and it issued an order to compel involuntary psychotropic medication. The court granted the petition for a period of one year.

## DISCUSSION

The Sexually Violent Predator Act "'provides a court process by which certain convicted violent sex offenders, whose current mental disorders make them likely to reoffend if free, may be committed, at the end of their prison terms, for successive two-year periods of state hospital confinement and treatment as long as the disorder-related danger persists.' [Citation.] [T]he Legislature declared that the purpose of the Act is to confine and treat 'a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders' until 'they no longer present a threat to society.'"[1] (*In re Calhoun* (2004) 121 Cal.App.4th 1315, 1323, fn. omitted.)

A competent adult has a common law and constitutional right to refuse medical treatment, including the administration of antipsychotic drugs. (*In re Qawi* (2004) 32 Cal.4th 1, 14.) But an involuntarily committed patient may be forcibly treated with antipsychotic medication if a court has determined that he is not competent to refuse treatment. (*Ibid.*; *In re Calhoun, supra,* 121 Cal.App.4th at p. 1354.) The superior court shall determine competence to refuse treatment by clear and convincing evidence, "so clear as to leave no substantial doubt, [and] sufficiently strong to command the unhesitating assent of every reasonable mind." (*Conservatorship of Waltz* (1986) 180 Cal.App.3d 722, 733, fn. 14.)

---

**1** "The former two-year commitment was changed to an indeterminate term by an initiative measure adopted by the electorate in November 2006. (Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006) § 27 [Jessica's Law].)" (*People v. Shazier* (2014) 60 Cal.4th 109, 127, fn. 9.)

A judicial determination of competency to refuse treatment involves consideration of three factors: (1) whether the patient is aware of his situation and acknowledges the existence of his condition; (2) whether he understands the benefits and risks of treatment, as well as alternatives to treatment; and (3) whether he is able to understand and evaluate the information required to be given to patients whose informed consent is sought and participate in the treatment decision by rational thought processes. (*Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1322-1323.)

"We review an order authorizing involuntary administration of antipsychotic medication for substantial evidence." (*People v. Fisher* (2009) 172 Cal.App.4th 1006, 1016.)

Here, the evidence established that appellant required medication to control his symptoms of disorganized, incoherent, and delusional thoughts. When he previously did not take his medication, his symptoms returned until he was involuntarily compelled to take the medication. Dr. Lechner believed appellant would refuse the medication if given the choice. Appellant was aware he was being treated for paranoid schizophrenia, but he denied having mental illness and believed he was being improperly medicated. His insight was poor and he attributed his good functioning to his personal character and decisions, rather than his medication. Dr. Lechner believed appellant lacked the ability to weigh the risks and benefits of medication. This evidence supported the conclusion that appellant did not acknowledge the existence of his mental illness, did not understand the benefits of his treatment such that he could weigh the risks and benefits of treatment options, and could not rationally process and evaluate information required for his consent to treatment.

We conclude substantial evidence supported the superior court's determination that appellant was not competent to refuse treatment of his mental illness.

## DISPOSITION

The order is affirmed.

5