Filed 8/26/20  P. v. Fisher CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JACQULINE FISHER,<br><br>    Defendant and Appellant. | F080416<br><br>(Super. Ct. No. F19904565)<br><br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Fresno County.  Adolfo M. Corona, Judge.

Conness A. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Smith, Acting P.J., Snauffer, J. and DeSantos, J.

## INTRODUCTION

Appellant Jacquline Fisher was found incompetent to stand trial and the superior court ordered the involuntary administration of antipsychotic medication. Fisher contends there is no substantial evidence supporting the order. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

On July 11, 2019, Fisher was charged with second degree robbery, felony vandalism, and misdemeanor battery. On August 23, 2019, the trial court suspended criminal proceedings pursuant to Penal Code[1] section 1368 based upon defense counsel's doubt regarding Fisher's competence to stand trial. Dr. Howard Terrell was appointed to examine Fisher.

Pursuant to the trial court's order, Terrell conducted a psychiatric evaluation of Fisher on September 15, 2019, and issued a written report. Terrell noted that Fisher claimed to be Asian but appeared to be African-American and jail records stated she was " 'Black.' " Fisher told Terrell she was receiving Zyprexa, Depakote, and hydroxyzine while in jail.

Fisher reported she had been diagnosed as having bipolar disorder and schizophrenia and received SSI disability payments based on the diagnosis. However, Fisher did not believe she had any mental illness. Fisher also reported five inpatient psychiatric hospitalizations under Welfare and Institutions Code section 5150. She initially denied ever having auditory hallucinations, then later admitted experiencing them. She also first admitted visual hallucinations, then denied ever experiencing them.

Fisher reported receiving numerous psychotropic medications over the years and experiencing paranoia. She also reported experiencing manic episodes. Fisher admitted to using methamphetamine for 10 to 15 years and cocaine for 30 years.

---

[1]     References to code sections are to the Penal Code.

2

Terrell observed Fisher demonstrated very poor eye contact; frequently appeared to be responding to internal stimuli; and often gave paranoid responses. Terrell found Fisher's judgment and insight to be poor. Fisher's IQ was within the borderline range for mild mental retardation, but this was difficult to assess because of her paranoid and psychotic state of mind. Her thought processes fluctuated from coherent to loose with a paranoid theme.

Terrell concluded Fisher suffered from a psychotic mental disorder that rendered her incompetent to stand trial. He did not believe competency could be restored without the use of antipsychotic medication. Terrell concluded Fisher was not mentally competent to give informed consent for psychotropic medication. Therefore, Terrell recommended the trial court authorize the involuntary administration of antipsychotic medication. He opined that without antipsychotic medication, Fisher was at substantial risk of harming herself or others.

On September 27, 2019, the trial court found Fisher incompetent to stand trial based on Terrell's report. The trial court also ordered that Fisher be involuntarily treated with psychotropic medications if necessary. A placement evaluation was ordered.

A placement evaluation was conducted of Fisher on October 30, 2019. In the interview, Fisher again stated she was Asian. She had difficulty maintaining eye contact, her mood was dysthymic, and her responses evidenced paranoia. Fisher again denied any mental illness, although she acknowledged being diagnosed with schizophrenia and bipolar disorder.

Fisher acknowledged taking medication for mental illness, but also claimed to be taking " 'Anthrax.' " She seemed hesitant to continue her medications after release from jail. Fisher denied experiencing any current visual or auditory hallucinations. She admitted abusing drugs since she was " 'young' " and stated she frequently used cocaine,

3

heroin, and methamphetamine. Fisher did not believe she would abuse drugs again if released but could not identify any support system.

The evaluation concluded that Fisher lacked insight and understanding of her mental illness, substance abuse history, and need for receiving appropriate treatment. Her substance abuse placed her at serious risk because it would alter her psychotropic medications and increase her symptoms.

The evaluation concluded Fisher would benefit from an intensive inpatient program where she would receive treatment that might include psychotropic medication.

On November 18, 2019, the trial court ordered that Fisher be committed to the State Department of State Hospitals for no more than two years. The involuntary administration of psychotropic medication also was authorized. There was no objection to the placement or the authorization for involuntary medication.

Fisher appealed.

## DISCUSSION

Fisher contends the order for the involuntary administration of psychotropic medication is not supported by substantial evidence.

### *Standard of Review and Applicable Law*

A competent adult has a common law and constitutional right to refuse medical treatment, including the administration of antipsychotic drugs. (*In re Qawi* (2004) 32 Cal.4th 1, 14.) However, an involuntarily committed patient may be forcibly treated with antipsychotic medication if a court has determined that she is not competent to refuse treatment. (*Ibid.*; *In re Calhoun* (2004) 121 Cal.App.4th 1315, 1354.)

The superior court shall determine competence to refuse treatment by clear and convincing evidence, "so clear as to leave no substantial doubt, [and] sufficiently strong to command the unhesitating assent of every reasonable mind." (*Conservatorship of Waltz* (1986) 180 Cal.App.3d 722, 733, fn. 14.) A judicial determination of competency

4

to refuse treatment involves consideration of three factors: (1) whether the patient is aware of his situation and acknowledges the existence of his condition; (2) whether he understands the benefits and risks of treatment, as well as alternatives to treatment; and (3) whether he is able to understand and evaluate the information required to be given to patients whose informed consent is sought and participate in the treatment decision by rational thought processes. (*Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1322–1323.)

Section 1370 also requires a trial court to make certain findings regarding a defendant's placement and treatment until competency is restored. With respect to involuntary administration of medication, the trial court must determine that the defendant lacks capacity to make a decision on medication; the defendant's disorder requires treatment; and if treatment is not provided, it is probable that serious harm will result to the defendant. (§ 1370, subd. (a)(2)(B)(i)(I).)

"We review an order authorizing involuntary administration of antipsychotic medication for substantial evidence." (*People v. Fisher* (2009) 172 Cal.App.4th 1006, 1016.)

### Analysis

Here, substantial evidence supports all three factors and the findings under section 1370. Fisher told Terrell that she did not believe she had any mental illness, despite five section 5150 inpatient commitments and a diagnosis of bipolar disorder and schizophrenia. She variously denied and admitted visual and auditory hallucinations. Clearly, Fisher was not aware of and did not acknowledge the existence of her condition, or that she had a condition requiring treatment.

Fisher acknowledged taking prescribed psychotropic medication, but additionally abused cocaine, heroin, and methamphetamine. Her substance abuse would alter the psychotropic medication and increase her symptoms. She had poor insight and judgment

5

and lacked understanding of her mental illness and benefits of treatment. This evidences a lack of understanding of the benefits and risks of treatment, the second factor.

Fisher's thought processes were not always coherent, and her responses evidenced paranoia. Terrell opined that Fisher was not mentally competent to give informed consent to treatment. Thus, evidence supports the third factor that Fisher was not capable of informed consent. This also establishes that Fisher is presently suffering adverse effects of her mental illness. (§ 1370, subd. (a)(2)(B)(i)(I).)

Terrell also expressed concern that without medication, Fisher was at risk of harming herself or others because of her psychotic state of mind and history of violent criminal behavior. (§ 1370, subd. (a)(2)(B)(i)(I).)

Fisher offered no evidence to contradict Terrell's report in the trial court. The evidence before the trial court provided substantial evidence supporting the involuntary administration of antipsychotic medication. (*People v. Fisher*, *supra*, 172 Cal.App.4th at p. 1016.)

## DISPOSITION

The order authorizing the involuntary administration of antipsychotic medication is affirmed.

6