Filed 7/26/22  P. ex rel. State Dept. of State Hospitals v. S.F. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE ex rel. STATE DEPARTMENT OF STATE HOSPITALS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.F.,<br><br>    Defendant and Appellant. | 2d Crim. No. B317820<br>(Super. Ct. No. 21MH-0003)<br>(San Luis Obispo County) |

S.F. appeals from the trial court's order compelling his involuntary medication with antipsychotic drugs.  S.F. contends the medication order should be vacated because there was insufficient evidence that he lacks the capacity to make informed decisions about his medical treatment.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

S.F. was committed to Atascadero State Hospital in June 2020 as an offender with a mental health disorder (OMHD).[1] (See Pen. Code, § 2962 et seq.)  In January 2021, the Department of State Hospitals petitioned the trial court to order S.F. to undergo involuntary treatment with antipsychotic medications pursuant to *In re Qawi* (2004) 32 Cal.4th 1 (*Qawi*) and Welfare and Institutions Code section 5300 et seq.  The court granted the petition, and ordered that S.F. be involuntarily medicated for up to one year.

In January 2022, the Department petitioned the trial court to renew the order compelling S.F.'s involuntary medication.  The petition alleged that S.F. has been diagnosed with schizoaffective disorder, bipolar type, and suffers from auditory hallucinations, persecutory delusions, and disorganized behavior and thought processes, among other allegations.  He does not believe he needs treatment because he does not have a mental disorder and does not benefit from antipsychotic medication.

Dr. David Fennell testified as an expert at the hearing on the Department's renewal petition.  He said that S.F. was diagnosed with schizoaffective disorder in his late teens or early 20's.  The disorder primarily manifests itself as auditory hallucinations, which S.F. describes as a "natural ability to hear voices" or telepathy.

S.F. exhibits irritation, agitation, and paranoia, including the belief that others wish to do him harm.  He has a history of noncompliance with his medication regimen and a history of becoming angry and irritable to the point of getting into physical

_____

[1] OMHDs were previously termed "mentally disordered offenders" or "MDOs."  (Pen. Code, former § 2962, subd. (d)(3).)

and verbal confrontations. His mental disorders are currently being treated with three medications.

Dr. Fennell said that S.F. does not believe that he has a mental disorder and believes that he is being wrongly medicated. When S.F. does not take his medications he experiences more severe hallucinations and paranoia and has less ability to keep his temper. When he complies with his medication regimen he hears voices less often; is less guarded, paranoid, and distracted; and does not lose his temper as easily.

On cross-examination, Dr. Fennell testified that S.F.'s concerns about the side effects of his medications are legitimate. But S.F. lacks the ability to understand how to minimize these side effects because he does not believe that he has a mental disorder. This also prevents him from rationally weighing the benefits of the medications he is prescribed.

Dr. Fennell concluded that S.F. requires treatment with antipsychotic medications, is incompetent to refuse them, and should continue to be administered the medications involuntarily. The trial court agreed, and granted the Department's petition to involuntarily medicate him for up to one year.

DISCUSSION

S.F. contends the involuntary medication order should be vacated because there was insufficient evidence that he is incapable of making decisions about his medical treatment. We disagree.

A court may order an OMHD to be involuntarily treated with antipsychotic medication if it determines that the offender is "incompetent to refuse medical treatment." (*Qawi, supra,* 32 Cal.4th at p. 27.) Determining whether an OMHD is incompetent

3

to refuse treatment requires consideration of three factors: (1) whether the offender is aware of and acknowledges their mental disorder; (2) whether the offender is "able to understand the benefits and the risks of, as well as the alternatives to, the proposed intervention"; and (3) whether the offender is "able to understand and . . . evaluate the information required to be given patients whose informed consent is sought . . . and otherwise participate in the treatment decision by means of rational thought processes." (*Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1322-1323 (*Riese*).) We review a determination that an offender is incompetent to refuse medical treatment for substantial evidence. (*People v. Fisher* (2009) 172 Cal.App.4th 1006, 1016.)

Substantial evidence supports the determination that S.F. is incompetent to refuse medical treatment. Dr. Fennell testified that S.F. suffers from schizoaffective disorder, with symptoms including auditory hallucinations, paranoia, irritation and agitation, and the belief that others wish to harm him. He also said that S.F. refuses to acknowledge his mental disorder, and instead believes that he is telepathic and does not need medication. S.F. did not counter Dr. Fennell's testimony at the *Qawi* hearing, but argued his awareness that he has the "gift" of being able to hear voices means that he has the capacity to refuse treatment. The first *Riese* factor weighs in favor of the trial court's medication order.

So do the second and third. Because he refuses to accept that he suffers from a mental disorder, S.F. does not understand the risks and benefits of his medications. He believes his medications "ha[ve] literally nothing to do with" any improvements in his condition, "denies strongly that there are

4

any benefits associated" with them, and instead believes they only cause him harm. S.F.'s refusal to acknowledge his disorder also hinders his ability to discuss alternatives to his medication regimen, including adjusting his current dosages to help mitigate some of the side effects. It thus prevents him from being able to rationally evaluate and participate in his treatment decisions. The second and third *Riese* factors weigh in favor of the trial court's medication order.

This case is unlike *Conservatorship of Waltz* (1986) 180 Cal.App.3d 722, on which S.F. relies. The conservatee in *Waltz* feared undergoing electroshock treatment during his psychotic episodes. (*Id*. at p. 732.) But he also feared undergoing the treatment during his nonpsychotic episodes. (*Ibid*.) He additionally acknowledged he had a mental disorder, understood that he was undergoing treatment, understood that his doctors believed the treatment was helping him, understood the potential risks of that treatment, and understood that he could refuse it. (*Ibid*.) These understandings undercut the trial court's determination that the conservatee could not give informed consent. (*Id*. at p. 734.)

In contrast to the *Waltz* conservatee, here, the evidence does not show that S.F. has nonpsychotic episodes during which he understands that he has a mental disorder and the treatments he is undergoing. To the contrary, S.F. consistently refuses to acknowledge his mental disorder. He does not understand the risks and benefits of his medications, and cannot participate in his treatment decisions. Substantial evidence thus supports the trial court's determination that he lacks the capacity to refuse medical treatments.

5

DISPOSITION

The trial court's order compelling S.F.'s involuntary treatment with antipsychotic medication, entered January 21, 2022, is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.

Michael L. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Jordan R. Beres, Deputy Attorneys General, for Plaintiff and Respondent.